UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JOSEPH LEE SNELLING, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:17-CV-623-JD-MGG |
| | ) | |
| WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

OPINION AND ORDER

Joseph Lee Snelling, Jr., a prisoner without a lawyer, filed a habeas corpus petition challenging his disciplinary hearing (MCF 17-05-28) at the Miami Correctional Facility held on May 12, 2017, where a Disciplinary Hearing Officer (DHO) found him guilty of making or possessing intoxicants in violation of Indiana Department of Correction (IDOC) policy B-231. ECF 1 at 1. As a result, he lost 30 days earned credit time and was demoted from Credit Class 1 to Credit Class 2. *Id.*

The Fourteenth Amendment guarantees prisoners certain procedural due process rights in prison disciplinary hearings: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense, when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" in the

record to support the guilty finding. *Superintendent, Mass Corr Inst. v. Hill*, 472 U.S. 445, 455 (1985). In his petition, Snelling argues there are three grounds which entitle him to habeas corpus relief.

First, Snelling contends that the DHO did not have sufficient evidence to find him guilty. ECF 1 at 3. In the context of a prison disciplinary hearing, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985). "In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (quotation marks omitted).

> [T]he findings of a prison disciplinary board [need only] have the support of some evidence in the record. This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. Although some evidence is not much, it still must point to the accused's guilt. It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (quotation marks, citations, parenthesis, and ellipsis omitted).

Here, Snelling was found guilty of violating IDOC offense B-231 which prohibits inmates from "[m]aking or possessing intoxicants, or being under the influence of any

intoxicating substance (e.g., alcohol, inhalants)."  Adult Disciplinary Process, Appendix

I. http://www.in.gov/idoc/files/02-04-101_APPENDIX_I-OFFENSES_6-1-2015(1).pdf.

The Conduct Report charged Snelling as follows:

On the 30th day of April at approximately 10:45 PM Sgt. E. Parkin and, I Officer A. Smith were conducting a cell search on the 3/4 side of CHU in cell 349/350.  When we opened the property box belonging to Offender Snelling, Joseph DOC# 178636 from C-350, we found a large trash bag filled with homemade alcohol, commonly referred to as "hooch".  Offender Snelling admitted that the intoxicant belonged to him.  Offender Snelling was identified by his State issued ID badge.

ECF 1 at 4.

The DHO had sufficient evidence to find Snelling guilty of violating offense B-231.  A conduct report alone can be enough to support a finding of guilt.  *McPherson*, 188 F.3d at 786.  Such is the case here.  In the conduct report, Officer Smith detailed his first-hand knowledge of discovering Snelling's waterbag containing homemade alcohol or "hooch" when he and Sergeant Parkin conducted a search of cell 349/350 on April 30, 2017.  ECF 1 at 4.  Here, he noted that, when they opened Snelling's property box, they found a large trash bag filled with homemade alcohol.  *Id*.  Officer Smith then memorialized the fact that, when they discovered the homemade alcohol, Snelling admitted that the alcohol belonged to him.  *Id*.  Sergeant Parkin also provided a statement corroborating the discovery of the homemade alcohol in Snelling's cell as described in the conduct report.  ECF 1 at 9. Because the waterbag was discovered in Snelling's cell inside his property box and he admitted that it belonged to him, there was more than "some evidence" for the DHO to conclude that Snelling violated offense

3

B-231. Therefore, the DHO's finding that Snelling was guilty was neither arbitrary nor unreasonable in light of the facts contained in the conduct report.

Nevertheless, Snelling contends there was insufficient evidence to find him guilty because his cell-mate, offender Ely Harvey, claimed ownership of the waterbag. ECF 1 at 3. In his petition, Snelling states that Harvey wrote a statement explaining that Harvey himself owned the waterbag and it was located in Harvey's property box, but Snelling only used the property box three times a week with Harvey. *Id*. According to Snelling, Harvey admitted in his statement that he also owned the hose for the waterbag, which was found in the property box and Snelling had not accepted possession of any item that had been confiscated. *Id*. According to Snelling, Harvey asked Officer Smith to write him up for this incident but she refused and stated to Snelling, "I got you now." *Id*.

While it is not clear from his petition, Snelling appears to believe that only one person can be in possession of contraband at a time. However, that is not the case under IDOC policy. The IDOC defines possession as being "[o]n one's person, in one's quarters, in one's locker or under one's physical control. For the purposes of these procedures, offenders are presumed to be responsible for any property, prohibited property or contraband that is located on their person, within their cell or within areas of their housing, work, educational or vocational assignment that are under their control. Areas under an offender's control include, but are not limited to: the door track, window ledge, ventilation unit, plumbing and the offender's desk,

4

cabinet/locker, shelving, storage area, bed and bedding materials in his/her housing assignment and the desk, cubicle, work station and locker in his/her work, educational or vocational assignment." The Disciplinary Code for Adult Offenders. http://www. in.gov/idoc/files/02-04-101 _The_Disciplinary_Code_for _Adult_Offenders 6-1-2015.pdf. In other words, multiple offenders may have control over a space, and multiple offenders can be in possession of contraband. *See Hamilton v. O'Leary*, 976 F.2d 341, 346 (7th Cir. 1992) (where contraband was present in a cell occupied by four inmates, and there was a substantial likelihood that all inmates were aware of the contraband, there was sufficient evidence to support a disciplinary finding for possession). Here, Snelling was aware that the waterbag containing homemade alcohol was in his cell and concealed in the property box because he initially admitted to Officer Smith that the waterbag belonged to him. But even if Snelling's assertion that Harvey owned the waterbag is true, it is irrelevant to the question of Snelling's possession because, according to IDOC policy, an offender does not need to be the owner of the contraband in order to be guilty of possession. As a final point, the court's review of the record shows that Harvey's statement is contained in the administrative record and the DHO considered it in reaching a decision. *McPherson*, 188 F.3d at, 786 (courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence). Therefore, this first ground does not state a basis for habeas corpus relief.

In the second ground, Snelling asserts his due process rights were violated because prison officials did not test the liquid contained in the waterbag to determine if it was alcohol. ECF 1 at 2. However, the prison's refusal to test the liquid did not violate Snelling's due process rights. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. While prisoners have a right to submit relevant exculpatory evidence, they do not have the right to create evidence which does not already exist because "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits." *Id. See also Freitas v. Auger*, 837 F.2d 806, 812 n.13 (8th Cir. 1988) ("Freitas was not entitled to a polygraph examination . . ."); *Rhatigan v. Ward*, 187 Fed. Appx. 889, 890-891 (10th Cir. 2006); and *Arthur v. Ayers*, 43 Fed. Appx. 56, 57 (9th Cir. 2002) (inmates were not entitled to laboratory testing of substances). Therefore, the fact that the liquid in the waterbag was not tested for alcohol is not a basis for habeas relief.

In the third ground, Snelling appears to assert that his due process rights were violated because Officer Smith wrote him up in retaliation for Officer Smith's prior fraudulent conduct reports being dismissed. ECF 1 at 2. "[P]risoners are entitled to be free from arbitrary actions of prison officials." *McPherson*, 188 F.3d at 787. Here, however, Snelling cites to no evidence and provides no argument from which retaliation may be inferred. Nevertheless, "even assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is found in the

6

procedures mandated by due process." *Id*. In other words, the protections to which Snelling was entitled are the protections afforded by *Wolff*, and his claim that the charge was fraudulent or false does not itself entitle him to federal habeas corpus relief. Therefore, this third ground does not state a basis for relief.

For these reasons, the petition is DENIED pursuant to Section 2254 Habeas Corpus Rule 4 and the clerk is directed to CLOSE this case.

SO ORDERED on June 21, 2018

/s/ JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT